UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/13/17

--------------------------------------X

MAUREEN OTTOSON,

                    Plaintiff,

    -against-

SMBC LEASING AND FINANCE, INC.,
DAVID WARD and LISA SAVINON,

               Defendants.

--------------------------------------X

13 Civ. 1521

OPINION

A P P E A R A N C E S:

    Attorneys for Plaintiff

    COREY STARK PLLC
    110 East 59th Street, 22nd Floor
    New York, NY 10022
    By:  Corey Stark, Esq.

    Attorneys for Defendants

    PROSKAUER ROSE LLP
    11 Times Square
    New York, NY 10036
    By:  Andrew E. Rice, Esq.
          Lloyd B. Chinn, Esq.

**Sweet, D.J.**

Defendants SMBC Leasing and Finance, Inc. ("SMBCLF"), David Ward ("Ward"), and Lisa Savinon ("Savinon") (collectively, the "Defendants") have moved pursuant to Rule 37 of the Federal Rules of Civil Procedure for sanctions to be imposed upon plaintiff Maureen Ottoson ("Ottoson" or the "Plaintiff") for spoliation of evidence, specifically seeking an adverse inference instruction, and fees and costs.

For the reasons set forth below, the motion of the Defendants for an adverse inference is granted, and their application for fees and costs is adjourned to the settlement of final judgment.

## I. Prior Proceedings

Plaintiff filed this action accusing Defendants of discrimination based on a perception of disability arising from a report allegedly in SMBCLF's possession on March 2, 2013. Plaintiff was employed by SMBCLF as an Assistant Vice President performing contract administration from April 30, 2012 through August 1, 2012. Plaintiff's Complaint ("Compl.") ¶¶ 25, 26.

1

On July 9, 2012, Plaintiff's then-counsel Jesse Rose

("Rose") sent a demand letter to Defendants' Human Resources

Department threatening litigation and requesting Plaintiff's

personnel file. Declaration of Andrew E. Rice [hereinafter,

"Rice Decl."], Ex. X (Rose Letter to Smith). Plaintiff alleges

that on or around August 31, 2012, she filed a Charge of

Discrimination with the U.S. Equal Employment Opportunity

Commission ("EEOC"), and that she received a Notice of Right to

Sue dated January 31, 2013. Compl. ¶¶ 4-5.


The Complaint alleges that subsequent to her hire,

SMBCLF performed a background check on Plaintiff, the results of

which included a "government/insurance report" (the "Report")

that contained "inaccurate and defamatory information about

Ottoson, her home, and her state of mind." Compl. ¶¶ 20; 29.

Plaintiff testified during her deposition that she first learned

of the existence of this Report in the 1980s. Rice Decl., Ex. C

(Relevant Excerpts of Plaintiff's May 2014 and September 2015

Depositions) [hereinafter, "Tr."], at 538:7-9. Plaintiff alleges

that Defendants "formed the inaccurate belief that Ottoson

suffers from a mental impairment and disability" based on the

contents of the alleged Report. Compl. ¶¶ 30, 48. Plaintiff

further alleges that she was terminated based on SMBCLF's

misperception that she was disabled, and in retaliation for

2

complaining about discrimination based on perceived disability.
*Id.* ¶¶ 47, 49.

Plaintiff stated at her deposition that, as of
November 2013, eight months after she filed this lawsuit, she
had no proof that the Report existed. Tr. at 596:17-19. Despite
issuing more than a dozen subpoenas to past employers and
others, Plaintiff failed to receive the Report. Rice Decl. ¶ 23;
*see* Tr. 596:8-11 ("Q ... So as of November 2013, you had not
obtained the report from any source, correct? A. No, I
didn't."). Defendants have repeatedly denied having ever seen or
received the Report, and have stated under penalty of perjury
that they did not, and do not, possess the Report. *See, e.g.*,
ECF No. 33; Rice Decl., Ex. V (Excerpts of Deposition of
Defendant David Ward) at 82, 88-91; Rice Decl., Ex. W (Excerpts
of Deposition of Defendant Lisa Savinon) at 86-87, 107-09.

In light of Plaintiff's allegations, on November 21,
2013, Defendants propounded requests in their First Request for
the Production of Documents that either specifically or
generally called for the production of documents concerning the
Report and/or Plaintiff's communications concerning the Report,
including:

3

"documents memorializing communications with any individual, including but not limited to any current or former employees of SMBCLF, concerning the Complaint or any of [Plaintiff's] allegations in this action" (Request No. 14);

"documents, including, but not limited to, emails, instant messages, text messages or other messages on any social media or networking website in [Plaintiff's] possession, custody or control concerning SMBCLF or the allegations in this Complaint" (Request No. 15);

"documents that contain [Plaintiff's] records, notes, descriptions, conversations, discussion or thoughts concerning the allegations in the Complaint" (Request No. 16);

"documents concerning the 'Report' identified in Paragraph 18 of the Complaint" (Request No. 19); "documents concerning the allegation in Paragraph 18 of the Complaint that '[a]fter Ms. Ottoson's employment ended, JOHN DOE2 disclosed to Ms. Ottoson the existence of a government/insurance report . . . given the JP Morgan's Human Resource department containing a background check of Ms. Ottoson along with a comprehensive employment summary & many negative personal references" (Request No. 20); "documents written or prepared by, to, from, concerning, or concerning any communications with any potential witnesses in this action and/or any persons mentioned in the Complaint" (Request No. 63);

"written or recorded statements, opinions, and reports, the information for which has been obtained from any individual or entity contacted or interviewed in connection with this action (including drafts of such statements, opinions, and/or reports) . . ." (Request No. 64);

"statements, in whatever form, from third parties concerning [Plaintiff's] allegations in this action" (Request No. 71); and

"documents concerning, referring or relating to the subject matter of this action, the allegations in the Complaint, and/or the damages or other relief sought

4

in the Complaint, that have not been produced in
response to the above requests" (Request No. 73).

Rice Decl., Ex. A. These requests unquestionably encompassed
written communications Plaintiff may have had with witnesses
concerning the alleged Report.

Plaintiff produced documents concerning the Report in
response to Defendants' First Request for the Production of
Documents. In particular, on December 23, 2013, Plaintiff
produced signed statements from three former co-workers, not
from SMBCLF, who purported in such statements to have viewed the
Report years before her employment at SMBCLF: Ralph Berger ("Mr.
Berger"), Philip Weinstock ("Mr. Weinstock"), and Francesca
Aversa ("Ms. Aversa"). Rice Decl., Ex. D (Berger Statement
executed January 9, 2013); Ex. E (Aversa Statement dated
November 24, 2012); Ex. F (Weinstock Statement dated January 31,
2013). On March 31, 2014, Plaintiff produced, via email from
Rose, "addenda" from Mr. Berger and Ms. Aversa. Rice Decl., Ex.
H (Rose Email to Rice); Ex. I (Addendum to Berger Statement
dated March 18, 2014); Ex. J (Addendum to Aversa Statement dated
March 11, 2014).

One of the three individuals, Mr. Berger, later directly provided Defendants with numerous email communications that he had with Plaintiff concerning the written statements that he provided to her. Rice Decl. ¶ 8; Exs. K-S. In one email, Plaintiff directs Mr. Berger to "JUST COPY & PASTE & PLEASE TYPE THE WORK "ADDENDUM" ON TOP AS FOLLOWS." Rice Decl., Ex. Q (Ottoson-Berger email dated March 14, 2014). In another email to Mr. Berger, Plaintiff tells him to "[p]lease write the following statement below in the following format." Rice Decl., Ex. P (Ottoson-Berger email dated March 10, 2014); *see also* Rice Decl., Ex. O (Ottoson-Berger email dated February 1, 2014) ("In case Jesse [Rose] speaks to him again, please tell him Bonding Insurance because that is what your notarized letter to him stated.").

Even after she was on notice that Defendants had received documents from Mr. Berger, Plaintiff did not produce any communications with the three witnesses or drafts of their statements. Rice Decl. ¶¶ 6, 21; Exs. T-U. Further, to the extent that Plaintiff was no longer in possession or control of such documents, Plaintiff failed to provide any explanation or information about such documents or the circumstances of their loss, as required by Defendants' instructions to their Request for Production. Rice Decl. ¶ 6; Ex. A.

6

Defendants informed the Court by letter dated April 24, 2015, ECF Nos. 34-35, about the serious questions concerning Plaintiff's conduct in this matter, as was then relevant to Plaintiff's motion to compel a Rule 30(b)(6) deposition. Defendants also wrote to Plaintiff's counsel, on April 27, 2015, to demand supplemental responses to Defendants' First Request for the Production of Documents concerning Plaintiff's communications about the Report. Rice Decl., Ex. T. Plaintiff did not formally respond to the April 27 letter for several weeks, and the parties met and conferred by telephone concerning a potential motion to compel by Defendants on May 18, 2015. Rice Decl. ¶¶ 19-20. During that call, Plaintiff's counsel agreed to produce Plaintiff for further deposition. *Id.* ¶ 20. Later that day, Plaintiff's counsel served a letter stating that Plaintiff had "not identified any responsive documents within her possession or control," and that Plaintiff's counsel was "not aware of evidence that suggests that Plaintiff destroyed any documents whatsoever on or after the date that she commenced this action." Rice Decl., Ex. U.

On September 10, 2015, the parties submitted a Stipulation and Proposed Order that was so-ordered by the Court. ECF No. 38. This Stipulation, *inter alia*, extended the end date

of discovery, extended other relevant deadlines, and provided
that Defendants reserve their rights to take further discovery
or engage in motion practice arising out of Plaintiff's
continued deposition. *Id.*

Plaintiff appeared for a continued deposition on
September 29, 2015. During her deposition, defense counsel asked
Plaintiff about her email practices and she admitted to having a
"habit" to "automatically" delete her email. Tr. 632:18-22. The
following exchange established Plaintiff's ongoing deletion of
her email:

   Q.   ... And so, with respect to e-mail, e-mails that
        you sent to and from other people, perhaps Mr.
        Berger, Ms. Aversa, Mr. Weinstock, and others,
        about your claims, did you make any attempt to
        preserve, to keep those e-mails, prior to
        commencing your lawsuit against SMBC?

   A.   I don't recall so.

   Q.   You don't recall doing so?

   A.   No.

   Q.   And so, then it's possible that you had e-mail
        exchanges prior to December of 2013 relating to
        your claims that you deleted because you didn't
        think that there was any necessity that you keep
        them for this lawsuit?

   A.   I don't recall that.

   Q.   Well, let me ask you this: Was it your practice
        to delete e-mail?

A. It's a habit to do that if it's -- you know, I do that automatically. I'm pretty particular about that.

Q. So prior to December of 2013, did you take any steps to change your habits in that regard and keep e-mails that related to your claims against SMBC?

A. Prior to December, I don't recall specifically.

Q. You don't recall making any effort to keep e-mails prior to December of 2013?

MR. STARK: Objection to form. You can answer.

A. I don't recall anything.

Q. Okay. I'm not sure what that means. Did you take any steps prior to December '13 to change your normal habit of deleting e-mails so that you would keep any documents relating to your claims against SMBC?

A. I don't recall anything to what you had just stated.

Q. You don't recall doing anything to change your normal habits?

MR. STARK: Objection to form.

A. I don't recall.

Q. You don't recall doing anything to change your normal habits?

A. I don't recall.

Q. Okay. So, then, you may well have continued, to the best of your recollection, until December of '13, you continued deleting your e-mail whether it had anything to do with this case or not?

MR. STARK: Objection to form.

A.  If you don't recall, you don't recall. So I cannot answer that question if I truly do not recall.

Q.  So you don't remember one way or another whether you changed this habit of yours by which you would routinely delete e-mails, you don't know whether you did or didn't change that approach until December of 2013?

A.  I don't recall.

Q.  Now, after December of 2013, did you make any changes in your e-mail deletion habits?

A.  That I don't remember.

Q.  Let me ask you this: Have you ever, during any time while your EEOC charge was pending against SMBC, or after your lawsuit was filed, have you ever changed your practice with respect to deleting all of your e-mails?

MR. STARK: Objection to the form.

A.  I don't remember.

Q.  Have you ever done anything at any time to be careful about preserving electronic communications, e-mails, relating to your claims against SMBC?

A.  I understand your question, but I don't recall.

Q.  So how about since April of this year? Have you taken any steps since April of 2015 to ensure that you're not deleting electronic documentation that relates to your claims against SMBC?

A.  I don't remember.

Q.  How about yesterday?

A.  I don't remember.

Q.  How about last month? Did you do anything last month, in August, to make sure you weren't

10

deleting communications relating to this lawsuit
against SMBC?

A.    I don't recall.

Q.    Is there any time ever that you remember doing
      anything at all to make sure you weren't deleting
      documents related to this lawsuit?

A.    No, I don't recall.

Tr. 631:23-636:7.


           When asked whether she had specific emails with Mr.

Berger, the Plaintiff stated that she did not have any of them,

but acknowledged that the emails concerned Mr. Berger preparing

a statement to support her in this litigation. Plaintiff was

asked about Exhibit K, the email chain dated November 6 and 8,

2013:

Q.    Did you at that time retrieve this e-mail (indicating)
      from Mr. Berger and provide it to counsel?

A.    No, I didn't.

Q.    And then, more recently, you're aware that we have,
      that is SMBC, has requested all of these e-mails that
      it has obtained from Mr. Berger, it's requested that
      you produce them, right? You're aware of that?

A.    Yes, I am.

Q.    You haven't turned over any further e-mails, have you?

A.    There was nothing in my in-box or "sent" folder. . . .

Q.    ... While you had an EEOC charge pending against SMBC
      and counsel, what happened to this e-mail?

                            11

A.   I don't recall. It definitely was not in my in-box as of December 2013 or "sent" folder."

Tr. 580:7-17; 580:24-581:5.

Plaintiff was asked if she had the emails in Exhibit L, the email chain dated November 5 and 6, 2013:

Q.   ... did you look for these documents to see if you had them?

A.   I did look.

Q.   And you did not have them?

A.   I did not have them.

Q.   And you did not turn them over?

A.   I did not have them.

Tr. 590:17-23.

When Plaintiff was asked whether she had Exhibit M, the email chain dated November 8-10, 2013, she stated "I recall looking for them [the emails constituting Exhibit M] when [Mr. Stark] did ask me. But nothing was there." Tr. 614:14-15. Plaintiff testified that she has Mr. Berger's email address, Tr. 552:19-20, that her email address is on the emails with Mr. Berger, Tr. 581:6-11, that she sends emails to Mr. Berger, Tr. 577:4-7, that she was "communicating with Mr. Berger about the preparation of a statement for [her]," Tr. 588:7- 11, and that she believed it was "possible" that she sent these emails to Mr.

Berger, *see, e.g.*, Tr. 581:16, 588:6, 589:4. Plaintiff's explanation for not producing these emails was that she "does not recall" sending or receiving the emails to Mr. Berger. *See, e.g.*, Tr. 581:19, 588:2, 588:18.

Defense counsel asked whether Plaintiff had exchanged emails with Mr. Berger since April 2015. Plaintiff replied, "I don't recall." Defense counsel continued, "If you had, would they be in your possession?" Plaintiff asked, "You mean today?" Defense counsel: "Correct." Plaintiff's counsel interjected, "At your home, not with you." Plaintiff replied, "That would be correct." Defense counsel: "They would be in your possession?" Plaintiff: "I would imagine they would be. But I believe—no, because I don't have it. I don't remember." Tr. 680:15- 681:5.

When asked whether she "actually searched for and produced some documents in response to [Defendants' December 2013 document requests]," Plaintiff replied, "Whatever I had I gave [Mr. Rose] as of December 2013." Defense counsel continued, "And I believe you included in that production some e-mails. Do you recall that?" Plaintiff: "I don't recall." Tr. 614:25-615:9. Plaintiff testified that she does not recall making any attempt to preserve emails that she sent to or received from Mr. Berger,

Ms. Aversa, or Mr. Weinstock prior to commencing this lawsuit. Tr. 631-32.

Plaintiff was questioned about a particular November 6, 2013 email (Exhibit L) in which she wrote to Mr. Berger that her then-lawyer, Rose, "might now think he will be unable to go forward with my case," Tr. 595:22-23, because "we have NO Report and NO Proof that it exist [sic]," Tr. 596:6-7. When asked whether she threw documents like this email away, Ottoson responded, "I don't recall 2013." Tr. 583:12. When pressed, Plaintiff responded, "I don't have it currently." Tr. 583:17. When asked if she had moved or changed address, she simply said "No," Tr. 583:21, if she had suffered a fire or flood, she answered "I don't recall when," Tr. 583:25, or whether she had turned over relevant documents to her attorneys, she answered "I don't recall." Tr. 584:4.

Plaintiff has admitted that she emailed or otherwise communicated with Mr. Berger about his written statements that she produced in discovery, including, specifically, within the context of the parties' dispute over "bonding insurance" discovery, Tr. 577, 588, 650-51, 662-63, but testified that she could not locate and thus did not produce such communications, even those created after she commenced this action. Tr. 579-80,

14

589-90, 614, 668-69, 680-81, 684. Plaintiff claimed that she was unaware of her obligation to maintain relevant communications. *See, e.g.*, Tr. 629-31; Tr. 630:22-23 ("I don't recall any obligation, to be honest with you."). Plaintiff conceded that she does not recall whether she searched for responsive communications or whether she made any efforts, even after commencing this action, to maintain relevant communications. Tr. 615, 631-36, 683-84.

In light of Plaintiff's deposition testimony, Defendants served additional discovery requests on October 16, 2015. *See* Rice Decl., Ex. Y (Second Set of Interrogatories); Ex. Z (Second Document Requests); Ex. AA (Notice of Inspection). As explained in Defendants' motion to compel, the second discovery requests sought: (1) documents and information concerning Plaintiff's communications with third parties regarding the Report, as well as documents and information that could reasonably lead to the discovery of such communications; (2) to undertake a forensic examination of Plaintiff's computers and personal electronic devices to establish the extent of Plaintiff's spoliation and to determine whether any deleted emails or files could be retrieved; (3) the identity of Plaintiff's telephone service providers and the identity of any personal computing or telecommunications devices that Plaintiff

has used since April 30, 2012; and (4) Plaintiff's use of
telephone services since April 30, 2012. ECF No. 42, at 10-11.

Plaintiff continued to engage in discovery during this
time as well. On October 22, 2015, Defendants' Rule 30(b)(6)
witness was deposed by Plaintiff. Rice Decl. ¶ 30. Later, on
December 4, 2015, Plaintiff issued a subpoena to New York
University. ECF No. 43-4.

On December 7, 2015, Defendants' counsel conferred
with Plaintiff's counsel via telephone to attempt to resolve
Plaintiff's objections to Defendants' discovery requests. Rice
Decl. ¶ 31. Plaintiff's counsel indicated that Plaintiff does
not possess a computer or other personal electronic device, but
did not otherwise agree to provide documents or information in
response to Defendants' second discovery requests. *Id.* As of the
date of that call, Plaintiff had not served any written
responses, other than objections, to Defendants' second
discovery requests. *Id.*

On December 10, 2015, Defendants submitted a letter to
the Court with consent of Plaintiff seeking an extension of time
for the parties to submit the joint proposed pretrial order in
light of the existence of discovery disputes that would be the

subject of Defendants' forthcoming motion to compel and motion
for sanctions. ECF No. 39. The letter requested the "deadline be
extended to April 3, 2016, or, if later, within 14 days after
the disposition of Defendants' motions" (i.e., the motions to
compel and for sanctions). *Id.* The Court so-ordered Defendants'
request on December 11, 2015. ECF No. 40.

Defendants filed their motion to compel on December
23, 2015. ECF Nos. 41, 42. On February 4, 2016, the Court held
oral argument on the motion and granted it in part, ordering
that "Plaintiff shall comply with the instant discovery
requests." ECF Minute Entry, Feb. 4, 2016.

On March 2, 2016, Defendants received via mail
Plaintiff's Supplemental Response to Defendants' Notice of
Inspection, Rice Decl., Ex. AB, and Supplemental Response to
Defendants' Second Set of Interrogatories, Rice Decl., Ex. AC.
*See* Rice Decl. ¶¶ 32-33. Plaintiff responded to Defendants'
Notice of Inspection by stating: "Plaintiff does not possess any
personal computers or electronic communications devices." Rice
Decl., Ex. AB at 3. Plaintiff responded to Defendants'
supplemental interrogatories by stating: "Plaintiff has not
subscribed to telephone service during the assigned time period
[April 30, 2012 to the present]. Plaintiff did, however, have a

17

prepaid TracFone, which she lost in May 2012." Rice Decl., Ex. AC at 2-3. Plaintiff also stated that she "recalls using computers that belong to [her brother] William Ottoson" and other computers. *Id.* at 3.

On March 21, 2016, Defendants received via mail Plaintiff's Supplemental Response to Defendants' Second Request for Documents. Rice Decl., Ex. AD; Rice Decl. ¶ 34. Plaintiff's production consisted of a single three-page Verizon bill dated February 1, 2016, which reflected services delivered to Plaintiff's residence address but in the name of Plaintiff's mother, Mary Ottoson. Rice Decl., Ex. AD at 6-8. The bill shows that Verizon provided telephone services to Plaintiff's address for a telephone number associated with her, that at least one international call was made in January 2016 (it appears domestic calls are not listed), and that Verizon provided internet services to her address. *Id.*

On July 6, 2016, Defendants' counsel wrote to Plaintiff's counsel regarding deficiencies in Plaintiff's responses to Defendants' second discovery requests. Rice Decl., Ex. AE at 1-2. In the letter, Defendants highlighted Plaintiff's deficient production of Verizon bills and sought such documents for the entire relevant time period. Defendants also requested

information concerning William Ottoson's computer and noted that Plaintiff has internet. *Id.*

Plaintiff's counsel responded via letter on July 29, 2016, refusing to produce the requested discovery. *Id.* at 3. Defendants' counsel reiterated his requests on August 5, 2016. *Id.* at 4. Plaintiff's counsel responded via letter dated August 18, 2016 producing certain documents and stating that Plaintiff is unable to provide information "concerning the identification of the make, manufacturer name, model name, or serial number of the computer that Plaintiff used that belonged to William Ottoson . . . because that computer is missing," without providing any further information as to how or when that allegedly came to pass. *Id.* at 5. Plaintiff also produced Verizon bills for the time period March 2016 to August 2016, though the relevant time period was April 30, 2012 to the present. *Id.*; Rice Decl. ¶ 35.

On September 22, 2016, Defendants' counsel reiterated deficiencies in Plaintiff's production and reserved all rights with respect to the outstanding discovery. *Id.* at 6.

Defendants filed the instant motion on October 5,
2016, which was heard and marked fully submitted on March 30,
2017.

## II.    **The Applicable Standards**

The obligation to preserve evidence applies to all
relevant documents in existence and arises when a party
"reasonably anticipates litigation." As explained by the Second
Circuit:

> This obligation to preserve evidence arises when
> the party has notice that the evidence is
> relevant to litigation — most commonly when suit
> has already been filed, providing the party
> responsible for the destruction with express
> notice, but also on occasion in other
> circumstances, as for example when a party should
> have known that the evidence may be relevant to
> future litigation.

*Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998),
overruled on other grounds, *Rotella v. Wood*, 528 U.S. 549
(2000).

Spoliation is "the destruction or significant
alteration of evidence, or the failure to preserve property for
another's use as evidence in pending or reasonably foreseeable
litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776,

779 (2d Cir. 1999). Pursuant to Federal Rule of Civil Procedure 37(e), a court may sanction a party for failing to preserve relevant electronically stored information ("ESI") if the court finds that the party was "act[ing] with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). In addition, the court may impose discovery sanctions pursuant to "its inherent power to manage its own affairs." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002), *superseded by rule on other grounds as recognized by CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 495 (S.D.N.Y. 2016); *see Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses."), *superseded by statute on other grounds as recognized by Hernandez v. Jrpac Inc.*, No. 14 CIV. 4176 (PAE), 2016 WL 3248493, at *35 (S.D.N.Y. June 9, 2016).

Where a party seeks a jury instruction for the spoliation of ESI, it must establish that (1) the spoliating party had control over the evidence and an obligation to preserve it at the time of destruction or loss; (2) the spoliating party acted with a culpable state of mind upon destroying or losing the evidence; and (3) the missing evidence

is relevant to the moving party's claim. *See Residential Funding*, 306 F.3d at 107. In addition, there is the "obvious" requirement that "the evidence must have existed." *Stephen v. Hanley*, No. 03-cv-6226, 2009 WL 1437613, at \*2 (E.D.N.Y. May 20, 2009). A party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim by a preponderance of the evidence. *Sekisui Am. Corp. v. Hart*, 945 F. Supp. 2d 494, 509-10 (S.D.N.Y. 2013) (awarding sanctions for the destruction of ESI in the form of an adverse inference jury instruction).

The choice of an appropriate remedy for spoliation "is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (citation omitted). Sanctions should be designed to deter parties from engaging in spoliation, place the risk of an erroneous judgment on a party who wrongfully created the risk, and restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party. *Stinson v. City of N.Y.*, No. 10-cv-4228, 2016 WL 54684 (S.D.N.Y. 2016) (citing *West*, 167 F.3d at 779); *see also CAT3*, 164 F. Supp. 3d at 502. Sanctions should be tailored according to the prejudice suffered by the party seeking sanctions and the destroyer's

degree of culpability. *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 292 (S.D.N.Y. 2009) (citations omitted). The prejudiced party must not be held "to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence," because doing so "would allow parties who have destroyed evidence to profit from that destruction." *Pension Comm.*, 685 F. Supp. 2d at 468 (quoting *Residential Funding*, 306 F.3d at 109) (internal quotation marks, brackets, and ellipses omitted).

## III.  An Adverse Inference Based on Spoliation is Appropriate

In the context of a motion for spoliation sanctions, "relevance" means that "the destroyed evidence would have been favorable to the movant." *In re Methyl Tertiary Butyl Ether Prods. Liability Litig.*, 643 F. Supp. 2d 482, 495 (S.D.N.Y. 2009) (citation omitted); *see also Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456 (S.D.N.Y. 2010), *abrogated on other grounds by Chin v. Port Auth. of N.Y. & New Jersey*, 685 F.3d 135 (2d Cir. 2012) (referring to requirement that "the evidence would have been helpful in proving [the moving party's] claims" as requiring "prejudice"). "Relevance and prejudice may be presumed when the spoliating party acted in bad faith or in a grossly negligent

manner." *Pension Comm.*, 685 F. Supp. 2d at 467; *see also Sekisui*, 945 F. Supp. 2d at 508 ("When evidence is destroyed intentionally, such destruction is sufficient evidence from which to conclude that the missing evidence was unfavorable to that party.") (citation omitted); *Arista Records LLC v. Usenet.com*, 608 F. Supp. 2d 409, 439 (S.D.N.Y. 2009) ("When evidence is destroyed in bad faith, that alone is sufficient to support an inference that the missing evidence would have been favorable to the party seeking sanctions, and thus relevant.") (citations omitted).

Here, the evidence establishes relevance and prejudice because the Plaintiff "acted in bad faith or in a grossly negligent manner." *Pension Comm.*, 685 F. Supp. 2d at 467. The Plaintiff had control over the evidence and an obligation to preserve it from July 9, 2012, the date that her counsel sent a demand letter to Defendants threatening litigation and requesting Plaintiff's personnel file, *see* Rice Decl., Ex. X, or, at the latest, from August 31, 2012, when Plaintiff filed a Charge of Discrimination with the EEOC. *See* Compl. ¶ 4; *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("[T]he duty to preserve evidence arose, at the latest, on August 16, 2001, when *Zubulake* filed her EEOC charge.").

Following Plaintiff's charge filing, she obtained
statements from Ms. Aversa, *see* Rice Decl., Ex. E (dated
November 24, 2012), Mr. Berger, *see* Ex. D (signed on January 9,
2013), and Mr. Weinstock, *see* Ex. F (dated January 31, 2013),
which were produced in discovery. On March 31, 2014, Plaintiff
produced, via email from her then-counsel Mr. Rose, "addenda"
from Mr. Berger and Ms. Aversa. Rice Decl., Exhibit H-J. She had
a duty to preserve communications with these affiants; however,
Plaintiff has produced no documents or emails concerning her
communications with them. Rice Decl. ¶ 6 ("Plaintiff did not
produce any communications with Mr. Berger, Mr. Weinstock, or
Ms. Aversa, or any drafts of their statements, nor did Plaintiff
provide any explanation or information about documents that were
no longer in her possession or control."). With respect to
emails between Mr. Berger and Plaintiff, the earliest email
voluntarily provided to Defendants' counsel by Mr. Berger is
dated January 6, 2013, about six months after Plaintiff's
preservation duty first arose. *See* Rice Decl., Ex. X.

The Plaintiff continued to send highly relevant and
undeniably responsive emails to Mr. Berger throughout this
litigation and during discovery disputes, yet failed to disclose
them to Defendants. The emails indicate efforts by Plaintiff to
direct the exact contents of Mr. Berger's witness statement. *See*

25

Rice Decl., Ex. P (Email chain between Ottoson and Berger dated
March 9-10, 2014); Ex. Q (Ottoson-Berger email dated March 14,
2014) (directing Berger to "JUST COPY & PASTE & PLEASE TYPE THE
WORK 'ADDENDUM' ON TOP AS FOLLOWS" and explaining that she is
"sorry that I have to ask you but this is needed immediately
otherwise during the Discovery Dispute next week, the Judge may
can [sic] you into the court & I am trying to avoid that for
you. I will send you anything you have to pay for to get this
notarized."); Ex. R (Email from Ottoson to Berger dated March
18, 2014). By March 2014, when these emails were exchanged,
Plaintiff had already produced documents, including the three
affidavits, and the parties' counsel were discussing whether
"April 10 is an available date for Ottoson's deposition." Rice
Decl., Ex. H at 5 (Rice Email to Rose dated March 14, 2014).

        The emails also indicate that that Plaintiff operated
under the powerful motivator that, without proof of the
existence of the Report, Plaintiff's case had no basis to
continue. Plaintiff's November 10, 2013 email to Mr. Berger
shows that she understood the central relevance of the Report to
her case: "After our mediation meeting, I feel that [Mr. Rose]
has given up because of the opposition. He is young and
inexperienced. He also tried desperately to get me into dropping
everything for nothing because as we all know: We don't have the

26

report. No Report – No Case." Rice Decl., Ex. M. The missing evidence — communications in which Plaintiff discussed the existence of the Report with the only witnesses purported to have knowledge of it — is indisputably relevant to her case. As Plaintiff's deposition testimony and available writings make clear, she knew what would happen to her case if there was no evidence of the Report's existence.

    Defendants have provided this court with sufficient evidence, both direct and circumstantial, that: (1) Plaintiff communicated with Mr. Berger via email (see Rice Decl., Exs. K-S); (2) Plaintiff failed to take any reasonable steps to preserve these communications (see Rice Decl., Ex. C at 631-32); and/or (3) Plaintiff failed to produce these communications in violation of her discovery obligations. The logical inferences that can be drawn from these facts are that Plaintiff: (a) intentionally deleted the emails; (b) did not intentionally take any steps to preserve those emails; or (c) still has those emails in her possession but has failed to produce them. Any of these scenarios satisfies the requisite level of intent required by Federal Rule of Civil Procedure 37(e). *See, e.g.*, *Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*, No. 14-cv-6512, 2016 WL 4991623, at \*20 (S.D.N.Y. Sept. 16, 2016) (ordering sanctions in part because defendants failed "to make prompt

that has occurred" because "[d]efendants failed to take reasonable steps to preserve the ESI related to this case," "additional efforts to ensure the preservation of these materials once the spoliation letter was received" should have been made, and "[s]uch irresponsible and shiftless behavior can only lead to one conclusion—that [defendants] acted with the intent to deprive Plaintiff of the use of this information at trial"); *Brown Jordan Int'l, Inc. v. Carmicle*, No. 14-cv-60629, 2016 WL 815827, at *37 (S.D. Fla. Mar. 2, 2016) (imposing adverse inference sanctions against defendant for spoliation of evidence because the court found that defendant failed to take reasonable steps to preserve electronically stored information on his personal and company-owned devices); *Internmatch, Inc. v. Nxtbigthing, LLC*, No. 14-cv-5438, 2016 WL 491483, at *4-5, *12-14 (N.D. Cal. Feb. 8, 2016) (granting plaintiff a preclusion order, an adverse inference instruction, and attorneys' fees as sanctions because defendants willfully spoliated evidence by intentionally discarding devices that contained the electronic versions of the evidence despite having a duty to preserve relevant evidence).

During her depositions, Plaintiff admitted that she emailed with Mr. Berger and communicated with him concerning the written statement that he submitted at Plaintiff's request about

29

the Report. Tr. at 577, 588, 650-51, 662-63. Moreover, the emails that Mr. Berger provided to Defendants show extensive communication by email between Plaintiff and Mr. Berger.[1] Rice Decl., Exs. K-S. Mr. Berger, a third party witness, who has no identified interest in fabricating or fraudulently producing emails, provided these communications to Defendants. The content of the communications reveal that, at worst, Plaintiff has fabricated the existence of the "Report" on which her entire case rests, and at best, she has pressured witnesses to make certain assertions on her behalf.[2]

Plaintiff has admitted that she deleted emails during times when she had a duty to preserve them, and that she could not recall making any attempt to preserve emails that she sent to or received from Mr. Berger or the other individuals from whom she obtained written statements for this litigation. Even crediting Plaintiff's later contradictory testimony - that at some undefined point in time she ceased her practice of

---

[1]     Plaintiff's argument is that Defendants have not "authenticated" these emails, which they received from Mr. Berger, but at no time does Plaintiff contend that Defendants have fabricated the emails.

[2]     Plaintiff has acknowledged, in emails to Mr. Berger, that if there is "no Report," then she has "no case." Rice Decl., Ex. M. Defendants have stated, including under penalty of perjury, that they have never possessed, read, or seen any evidence of the existence of this supposed "Report," and deny all allegations relating to any discriminatory motive whatsoever for their termination of Plaintiff. *See* Defs. Br. at 2-3; Rice Decl., Exs. V & W; ECF No. 33.

routinely deleting emails – the existence of the emails that Mr. Berger provided establishes that Plaintiff destroyed them, and must have done so after her obligation to preserve the communications began.

Plaintiff has cited *Khadei v. Kaspiev*, 961 F. Supp. 2d 564, 569 (S.D.N.Y. 2013) for the proposition that "the spoliation doctrine is predicated on evidence actually existing and being destroyed." Opp. Br. at 5. While that proposition is correct, the case is inapposite. In *Khadei*, the court held that the act of "moving photographs to a new location" did not constitute destruction of evidence. *Id.* at 570. Instead, the court explained that there was absolutely no evidence that any actual evidence (i.e., again, the photographs) were destroyed or significantly altered. *Id.* Plaintiff was able to, and actually did, perform a full inspection of the photographs and of their location no matter where the photographs were located. *Id.* In *Khadei*, the non-spoliating party was able to inspect the photographs because they still existed, albeit in another location. Here, Defendants are unable to inspect all of Plaintiff's email communications with all of her witnesses because Plaintiff "failed to take reasonable steps to preserve" them, in violation of Rule 37(e), and this critical evidence cannot be "restored or replaced."

31

Plaintiff also cites to *Farella v. City of N.Y.*, No. 05-cv-5711, 2007 WL 193867, at \*1-2 (S.D.N.Y. 2007), where Plaintiffs (City firefighters and police officers) alleged that they suffered harm from lead exposure at a firing range. Plaintiffs claimed that the City destroyed and failed to preserve substantial lead exposure data. *Id.* at \*2. Plaintiffs' motion for spoliation sanctions failed because they had no "evidence showing that the 'missing' evidence ever existed." *Id.* Here, Defendants are in possession of Plaintiff's emails with Mr. Berger because Mr. Berger provided the emails to Defendants, and therefore, these and other relevant communications existed. Plaintiff has never denied sending or receiving the emails with Mr. Berger. She admitted during her deposition that it was indeed "possible" that she had sent and/or received these emails. Tr. at 581:16, 588:6, 589:4. Where, as here, Defendants have demonstrated the existence of the emails in question by producing such emails, Plaintiff cannot contradict such a demonstration by claiming she does not "recall" sending or receiving such emails. Plaintiff's contradictory testimony and lack of recollection does not serve to rebut Defendants' proffered evidence that the emails do indeed exist, were in fact sent to and received by Plaintiff, and were not preserved and/or produced by Plaintiff.

An adverse inference instruction is warranted here because Defendants have provided sufficient evidence that additional communications between Plaintiff and her witnesses likely existed, were not produced, and were relevant. *See DMAC LLC v. City of Peekskill*, No. 09-cv-5093, 2012 WL 4459290, at *4 (S.D.N.Y. 2012) (granting defendant's motion for sanctions based upon spoliation of evidence because it found that the moving party "proffered sufficient evidence from which a reasonable factfinder could infer that additional relevant e-mails-favorable to plaintiffs-existed but were not produced" and awarding an adverse inference instruction stating that the destroyed "e-mails would have been favorable to [the non-spoliating party's] case"). When, as here, a spoliating party has acted willfully or in bad faith, a jury can be instructed that "certain facts are deemed admitted and must be accepted as true." *Pension Comm.*, 685 F. Supp. 2d at 470 (citations omitted); *see also Sawabeh Info. Servs. Co. v. Brody*, No. 11-cv-4164, 2014 WL 46479, at *3 (S.D.N.Y. 2014), *aff'd & rev'd in part on other grounds*, 598 F. App'x 794 (2d Cir. 2015) (describing previous order granting motion for an adverse inference because plaintiffs had been "at least grossly negligent in the preservation and production of [ESI].") . Such an instruction can be "critical to assisting the innocent party in establishing the nature of the evidence that has gone

missing." *Id.* An adverse inference instruction "is imposed to ameliorate any prejudice to the innocent party by filling the evidentiary gap created by the party that destroyed evidence." *OrbitOne Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 438 n.12 (S.D.N.Y. 2010).

## IV. Defendants' Application for Fees and Costs is Adjourned

Under Federal Rule of Civil Procedure 37(a)(5)(A), when a discovery motion is granted pursuant to Rule 37, the Court must "require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees." Fed. R. Civ. P. 37(a)(5)(A). Even outside the context of a Rule 37(e) dispute, the Court has the inherent authority to award attorneys' fees and costs to "punish the offending party for its actions and deter the litigant's conduct, sending the message that egregious conduct will not be tolerated." *Best Payphones, Inc. v. City of N.Y.*, No. 01-cv-8506, 2016 WL 792396 (E.D.N.Y. 2016) (internal citations omitted). Here, Plaintiff was faced at deposition with emails sent to her own email inbox and from her own email outbox to a person that she alleges is a material witness to the central fact in dispute in this litigation, *i.e.*, whether this

"Report" has ever existed. However, the assessment of costs and fees and any other similar applications will be adjourned to the final determination of this action.

## V.    Conclusion

For the reasons set forth above, the Defendants' motion for sanctions against Plaintiff is granted, an adverse inference instruction will be given, and the application for fees and costs is adjourned.

It is so ordered.

**New York, NY**
**July 13, 2017**

ROBERT W. SWEET
U.S.D.J.