UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAUREEN OTTOSON,
                Plaintiff,

-v-

SMBC LEASING AND FINANCE, INC. et al.,
                Defendants.

13-CV-1521 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

This case involves claims of employment discrimination and retaliation under the Americans with Disabilities Act (ADA) and the New York City Human Rights Law (NYCHRL). Following a jury trial in July 2019, Plaintiff Maureen Ottoson prevailed on one claim — retaliation under the NYCHRL — and was awarded $21,250 in backpay. Defendants SMBC Leasing and Finance, Inc. (SMBC) and Lisa Saviñon have moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is denied.

**I.    Background**

The Court presumes familiarity with the factual background and the lengthy procedural history of this case.

Maureen Ottoson was employed by SMBC in Manhattan for approximately three months in 2012. After interviewing with Lisa Saviñon, Head of Operations, and David Ward, then-President of SMBC, Ottoson was hired as Assistant Vice President, Contract Administration Specialist. She began her employment on April 30, 2012.

On June 11, 2012, Ottoson emailed SMBC's Human Resources Department to request access to her personnel file. This request arose from her belief that SMBC had been given a

"Report" that mistakenly stated that she suffered from agoraphobia and depression. Ottoson had been seeking a copy of this Report for many years, believing that it followed her from employer to employer, although she had never seen a copy.

On July 9, 2012, Ottoson's then-lawyer, Jesse C. Rose, sent a letter to SMBC, with the subject line "Maureen Ottoson's Employee File." The letter read:

> I represent Ms. Ottoson in her attempt to obtain a copy of her personnel file, inclusive of all documents transferred from previous employers and insurance carriers. Ms. Ottoson has requested full access to these documents previously but to no avail. For the foregoing reasons, producing the documents now would allow Ms. Ottoson closure and preclude the necessity of bringing legal action to obtain the records.
>
> Ms. Ottoson has reason to believe that there are vicious lies being perpetuated by records transferred to your office when she began working there. Those records are believed to (1) implicate [sic] that Ms. Ottoson suffers from a mental disability and (2) contain false and malicious lies about Ms. Ottoson's personal life. Ms. Ottoson believes that these records have led to disparate treatment in various offices, including her office at [SMBC].
>
> In an effort to resolve these issues and give Ms. Ottoson the opportunity to correct the perception that she is mentally disabled and/or other falsehoods contained in those records, Ms. Ottoson has authorized me to contact you to request that the documents be provided for review. Should your office refuse to allow Ms. Ottoson to review these documents I will have no choice but to advise my client of the various options available through the Court system. Ms. Ottoson does not believe that [SMBC] has created any of the false information in her file but does believe that it has affected her coworkers' perception of her at your company.
>
> Contact my office at your earliest convenience should you be willing to produce the personnel file in its entirety or to discuss this matter further.

(Pl. Ex. 11.)

On July 11, 2012, Sandra Lamparello, a Human Resources employee at SMBC, called Rose in response to his letter. She told him (1) that SMBC was not required to provide a copy of the personnel file in the absence of a subpoena, and (2) that there was nothing in Ottoson's personnel file implicating anything stated in the letter. (Pl. Ex. 11; Tr. 609-14.) Lamparello also

told Rose, according to her testimony, that Ottoson could come to Human Resources and review her personnel file. (Tr. 612.) Ottoson subsequently visited Human Resources and reviewed her personnel file, which did not contain the Report she claimed to be seeking. (Tr. 618-20.)

In late July 2012, Lamparello, Ward, and Saviñon decided to terminate Ottoson's employment as a result of her disruptive and harassing behavior toward Robert McCarthy, a consultant at SMBC, which they had been discussing for several weeks. Ottoson's employment formally terminated on August 1, 2012.

In March 2013, Ottoson filed this lawsuit against SMBC, David Ward, and Lisa Saviñon, claiming that she had been terminated based on perceived disability and retaliated against for protected activity.[1] The case was assigned to Judge Robert W. Sweet.

On April 8, 2019, following Judge Sweet's death, the case was reassigned to the undersigned.

The jury trial began on July 8, 2019, with Ottoson representing herself. On July 12, 2019, the jury found in favor of Defendants on (1) Ottoson's discrimination claims under the ADA and the NYCHRL, and (2) Ottoson's retaliation claim under the ADA. The jury found in favor of Ottoson, however, on her retaliation claim under the NYCHRL. On that claim the jury found SMBC and Saviñon liable. On July 15, 2019, following a damages phase, the jury awarded Ottoson $21,250 in backpay.[2] (Dkt. Nos. 231, 232.)

---

[1] The complaint, filed by Jesse Rose as Ottoson's counsel, did not explicitly raise a distinct retaliation claim. However, at a pretrial conference on January 31, 2018, Judge Sweet ruled that Ottoson (then represented by attorney Corey Stark) could maintain a retaliation claim. (Dkt. No. 108 at 21.) Over Defendants' objection, this Court reaffirmed Judge Sweet's ruling and allowed Ottoson to assert a retaliation claim under both the ADA and the NYCHRL. (Tr. 931, 1047-48.)

[2] Defendants moved for judgment as a matter of law under Rule 50(a) at the close of Ottoson's case and renewed that motion at the close of all the evidence. (Tr. 901-08, 970.) The

## II. Legal Standard

"Federal Rule of Civil Procedure 50 provides that a motion for judgment as a matter of law may be made at any time before the case is submitted to the jury, and, in the event of denial, the movant may renew the motion no later than 28 days after trial." *Koch v. Greenberg*, 14 F. Supp. 3d 247, 255 (S.D.N.Y. 2014) (citing Fed. R. Civ. P. 50(a)(2), (b)), *aff'd*, 626 F. App'x 335 (2d Cir. 2015).

A court may grant a motion for judgment as a matter of law "only when there is 'either an utter lack of evidence supporting the verdict, so that the jury's findings could only have resulted from pure guess-work, or the evidence [is] so overwhelming that reasonable and fair-minded persons could only have reached the opposite result.'" *Rosioreanu v. City of New York*, 526 F. App'x 118, 119–20 (2d Cir. 2013) (alteration in original) (quoting *Doctor's Assocs., Inc. v. Weible*, 92 F.3d 108, 112 (2d Cir. 1996)). "In ruling on a motion for judgment as a matter of law under Rule 50(b), a district court is required to 'consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence.'" *Stratton v. Dep't for the Aging for N.Y.C.*, 132 F.3d 869, 878 (2d Cir. 1997) (quoting *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 367 (2d Cir. 1988)). The court may not weigh evidence or make credibility determinations, *see Cross v. N.Y.C. Trans. Auth.*, 417 F.3d 241, 247 (2d Cir. 2005), and "[t]he movant's burden . . . will be 'particularly heavy after the jury has deliberated in the case and actually returned its verdict,'" *Koch*, 14 F. Supp. 3d at 255 (quoting *Cross*, 417 F.3d at 248).

---

Court denied the motion without prejudice to renewal. (Tr. 971.) Following the jury's verdict, Defendants filed this motion for judgment under Rule 50(b).

**III. Discussion**

To prevail on a retaliation claim under the NYCHRL, a plaintiff must show, by a preponderance of the evidence, (1) that she engaged in a protected activity of which her employer was aware; (2) that she suffered an adverse action that would be reasonably likely to deter a person from engaging in a protected activity; and (3) that there was a causal connection between the protected activity and the action. *Ardigo v. J. Christopher Capital, LLC*, No. 12-CV-3627 (JMF), 2013 WL 1195117, at *5 (S.D.N.Y. March 25, 2013). While these elements are similar to those applicable to a retaliation claim under the ADA, the NYCHRL has a "uniquely broad and remedial" purpose, and "must be reviewed independently from and more liberally than [its] federal and state counterparts." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (citing Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005)).

Defendants challenge the jury's verdict under the first and third elements of the NYCHRL retaliation claim. They argue that no reasonable jury could have found for Ottoson on that claim because (1) she did not engage in protected activity as a matter of law, and (2) there was no evidentiary basis for the jury to find that retaliation was a motivating factor in her termination.

**A.  Protected Activity**

Defendants first contend that the July 9, 2012 letter from Ottoson's lawyer was not protected activity because it did not put Defendants on notice that Ottoson was opposing *discrimination based on perceived disability*, as distinguished from merely requesting her personnel file. As Defendants point out — and as they argued extensively at trial — the focus of the July 9, 2012 letter was "obtain[ing] a copy of [Ottoson's] personnel file" (Pl. Ex. 11), as part

of her ongoing quest to obtain the elusive "Report." Indeed, the letter stated that Ottoson "does not believe that [SMBC] has created any of the false information in her file . . . ." (Pl. Ex. 11.)

Under the NYCHRL, as under federal law, actionable retaliation requires awareness on the part of the employer that the employee has engaged in protected activity. *See Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 450 n. 22 (S.D.N.Y. 2011). Under the City law, such protected activity includes "oppos[ing] any practice forbidden under this chapter." N.Y.C. Admin. Code § 8-107(7). There is often disagreement among jurists about how specific an employee's opposition must be — *qua* opposition to an unlawful practice — to be protected activity. *Compare, e.g.*, *Melman v. Montefiore Medical Ctr.*, 98 A.D.3d 107, 128-30 (App. Div. 1st Dep't 2012) (majority opinion of Friedman, J., joined by DeGrasse and Richter, JJ.), *with id.* at 140-43 (Acosta, J., dissenting); *compare also Albunio v. City of New York*, 67 A.D.3d 407, 408-09 (App. Div. 1st Dep't 2009), *aff'd*, 16 N.Y.3d 472 (2011) (majority opinion of Mazzarelli, Saxe, DeGrasse, and Abdus-Salaam, JJ.), *with id.* at 413-17 (Catterson, J., dissenting). The New York Court of Appeals appears to have adopted an expansive approach to this question under the NYCHRL in light of its broad remedial purpose, as reflected in the court's decision affirming the lower court's judgment in *Albunio*. *See* 16 N.Y.3d at 479.[3]

While Defendants are correct that the *focus* of the July 9, 2012 letter was on obtaining Ottoson's personnel file, the letter went further. It stated: "Ms. Ottoson believes that these

---

[3] The court explained: "While [Albunio] did not say in so many words that Sorrenti was a discrimination victim, a jury could find that both Hall and Albunio knew that he was, and that Albunio made clear her disapproval of that discrimination by communicating to Hall, in substance, that she thought Hall's treatment Sorrenti was wrong. Bearing in mind the broad reading that we must give to the New York City Human Rights Law, we find that Albunio could be found to have 'opposed' the discrimination against Sorrenti at the October 31 meeting." *Albunio*, 16 N.Y.3d at 479.

6

records [implying that she has a mental disability] have led to disparate treatment in various offices, including her office at [SMBC]." (Pl. Ex. 11.) The letter referred to "her coworkers' perception of her at your company" and sought "the opportunity to correct the perception that she is mentally disabled." (*Id*.) Having been properly instructed, the jury found SMBC and Saviñon liable under the NYCHRL — necessarily finding that Ottoson had engaged in protected activity in submitting the July 9, 2012 letter.[4] That finding was neither erroneous as a matter of law nor wholly lacking an evidentiary basis. Given the letter's statements about disparate treatment at SMBC and perceived mental disability, it was permissible for the jury to find that Ottoson had engaged in protected activity, despite the fact that the letter's "focus" or "essence" was on obtaining her personnel file. The Court cannot conclude that there was an "utter lack of evidence supporting the verdict," or that "reasonable and fair-minded persons could only have reached the opposite result.'" *Rosioreanu*, 526 F. App'x at 119–20 (2d Cir. 2013).[5]

Defendants also argue that the July 9, 2012 letter does not qualify as protected activity because it was not based on an *objectively reasonable* belief on Ottoson's part that Defendants were violating the NYCHRL by discriminating against her based on perceived disability. As

---

[4] The Court instructed the jury: "[U]nder City law, it is unlawful to retaliate in any manner against any person because that person has opposed forbidden discriminatory conduct. The City law still requires a causal connection between plaintiff's protected activity and defendants' retaliation; however, but-for causation is not required. Instead, it is enough to show that the plaintiff's termination was motivated at least in part by a retaliatory motive." (Tr. 1047-48.) The Court also instructed the jury that discrimination based on perceived mental disability is prohibited under the NYCHRL. (Tr. 1040-41.)

[5] Defendants cite *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir. 1988), for the proposition that an employee's complaint is not protected activity when its "essence" is that an employer was doing something that is not an unlawful employment practice. *Manoharan* is inapposite for two reasons. First, the Second Circuit was reviewing the district court's findings after a bench trial, so it was applying a deferential "clearly erroneous" standard to the district court's finding that the plaintiff had not engaged in protected activity. *Id.* Second, the court in *Manoharan* was applying federal law (Title VII) rather than the broadly protective NYCHRL. *See Albunio*, 16 N.Y.3d at 479.

7

Defendants point out, to be engaged in protected activity, an employee must have "a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Fattoruso v. Hilton Grand Vacations Co.*, 873 F. Supp. 2d 569, 581 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013).

This argument has some force — and Defendants forcefully presented it at trial. Indeed, the thrust of the July 9, 2012 letter was that records containing "vicious lies" about Ottoson had been transmitted to SMBC, and Ottoson's theory throughout this case has been that a "Report" containing these lies had followed her from job to job for many years. But there was no evidence at trial from which a reasonable jury could find that the "Report" existed, much less that it had been provided to SMBC.

Again, however, the deferential standard owed to the jury's verdict requires the Court to consider whether all the evidence at trial, with all reasonable inferences drawn favorably, could support a verdict for Ottoson on this claim. Notwithstanding the lack of evidence of the existence of the "Report," the Court concludes that there was sufficient evidence from which a jury could find that Ottoson reasonably believed that she was facing discrimination in the workplace. For example, a fellow employee of Ottoson testified that Saviñon referred to Ottoson as "crazy" and "nuts." (Tr. 884-85.) And Ottoson testified that supervisors and co-workers at SMBC made comments describing her as "mentally unstable or criminal" (Tr. 95), "slow, stupid, dopey" (Tr. 97), not "normal" (Tr. 98), and "sick" (Tr. 100). This testimony was sufficient to support a finding by the jury that, at the time her lawyer sent the July 9, 2012 letter, Ottoson had
8

a "reasonable belief" that she was being discriminated against based on perceived mental disability.[6]

B. **Retaliation As a Motivating Factor**

Finally, Defendants argue that the evidence was insufficient for a reasonable jury to find that retaliation was a motivating factor in Ottoson's termination. They contend that the evidence at trial was "overwhelming" that Ottoson was terminated because she was disrupting a co-worker, Robert McCarthy. Defendants describe the wealth of evidence that this was the real reason for Ottoson's termination. Indeed, in finding for Defendants on the ADA retaliation claim, the jury evidently found that Ottoson's protected activity was not the principal reason for — or the but-for cause of — her termination.

The jury's verdict in this case highlights an important distinction between the ADA and the NYCHRL — and how much lower the "causal connection" standard is under the latter statute. Under the ADA, a plaintiff claiming retaliation must prove that her protected activity was a "but-for cause" of adverse employment action. *See University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013); *Natofsky v. City of New York*, 921 F.3d 337, 349 (2d Cir. 2019). Under the NYCHRL, however, the protected activity need only have been "a motivating factor" in the adverse action. *Mihalik v. Credit Agricole Cheuvreux N. Am, Inc.*, 715 F.3d 102, 115 (2d Cir. 2013). The jury was instructed accordingly. *See supra* note 4. That lower standard made the difference in this case. The jury clearly found that Ottoson's

---

[6] Defendants point out that some of these comments about Ottoson were made after July 9, 2012, arguing that they cannot be considered in assessing the objective reasonableness of Ottoson's belief at the time of her lawyer's letter. As to at least some of the comments, however, the testimony does not indicate that they were made after July 9. In any event, the jury could have reasonably found that Ottoson had become aware of such comments by July 9, particularly in light of the July 9 letter's reference to "her coworkers' perception of her at the company" and "the perception that she is mentally disabled." (Pl. Ex. 11.)

9

termination "was motivated at least in part by a retaliatory motive" (Tr. 1047-48), but that her protected activity was not the but-for cause of her termination. The jury was in the position to assess the credibility of the witnesses — including Ottoson, her co-workers, and SMBC's decisionmakers — along with the written communications and circumstantial evidence. Considering all the evidence, the Court cannot conclude that no reasonable jury could make the findings made by the jury in this case.[7]

## IV. Conclusion

For the foregoing reasons, Defendants' motion for judgment as a matter of law is DENIED.

There remain two outstanding issues in this case, and the Court therefore defers entry of judgment until their resolution.

First, Judge Sweet previously granted a motion for sanctions against Ottoson for spoliation of evidence, but deferred an assessment of fees and costs. (*See* Dkt. No. 80.)

Second, Ottoson seeks attorney's fees as the prevailing party in the amount of $17,500 (the amount she represents she paid her two prior attorneys in connection with this case). (*See* Dkt. No. 210.)

Accordingly, it is hereby ORDERED that:

1. Within 21 days of the date of this Opinion and Order, Defendants shall file (1) a response to Ottoson's application for attorney's fees, and (2) any application for fees and costs in connection with Defendants' motion for sanctions, with appropriate documentation;

---

[7] As they did at trial, Defendants emphasize the undisputed evidence that McCarthy had been complaining about Ottoson's disruptive behavior both before and after Ottoson's lawyer sent the July 9, 2012 letter. Despite the strength of that evidence — and despite the fact that another jury might have come out differently — the jury was not precluded from determining that retaliation was one of the motivating factors in SMBC's decision to terminate Ottoson.

2. Ottoson may respond to Defendants' submissions within 21 days of receiving them;

3. Jesse C. Rose and Corey Stark, Ottoson's prior counsel, are each directed to submit a letter to the Court within 21 days (1) confirming the amount of the retainer paid to them by Ottoson in connection with this case, and (2) indicating whether they are asserting a charging lien in this case.

The Clerk of Court is directed to close the motion at Docket Number 206.

SO ORDERED.

Dated: February 24, 2020
New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*