UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAUREEN OTTOSON,
                     Plaintiff,

-v-

SMBC LEASING AND FINANCE, INC. et al.,
                     Defendants.

13-CV-1521 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    This case involves claims of employment discrimination and retaliation under the Americans with Disabilities Act (ADA) and the New York City Human Rights Law (NYCHRL). Following a jury trial in July 2019, Plaintiff Maureen Ottoson, proceeding *pro se*, prevailed on one of her four claims — retaliation under the NYCHRL — and was awarded $21,250 in backpay. This Court subsequently denied a motion for judgment as a matter of law filed by Defendants SMBC Leasing and Finance, Inc. (SMBC) and Lisa Saviñon, and ordered further briefing on the remaining issues in the case. (*See* Dkt. No. 233.) The Court now resolves those remaining issues: (1) Plaintiff's motion for attorney's fees as the prevailing party; (2) a charging lien asserted by Plaintiff's former counsel, Corey Stark; and (3) Defendants' motion for sanctions based on Plaintiff's spoliation of evidence.

    The Court presumes familiarity with the factual background and the lengthy procedural history of this case, based on the trial record, the prior rulings of this Court, and the prior rulings of Judge Robert W. Sweet, to whom this case was assigned until April 8, 2019.

**I.    Plaintiff's Motion for Attorney's Fees**

    Like the ADA, the NYCHRL permits a court, in its discretion, to award reasonable attorney's fees and costs to a "prevailing party." *See* NYC Administrative Code § 8-502(g).

1

Plaintiff did not prevail at trial on her discrimination claims under the ADA and the NYCHRL, nor did she prevail on her retaliation claim under the ADA.  She did, however, prevail on her retaliation claim under the NYCHRL.  As explained in the Court's prior opinion, the jury's mixed verdict reflects the lower standard under the City law, which imposes liability whenever unlawful retaliation was a "motivating factor" in an adverse employment action, rather than a "but-for cause" as under the ADA.  *See Ottoson v. SMBC Leasing & Finance, Inc.*, No. 13-cv-1521, 2020 WL 881992, *5 (S.D.N.Y. Feb. 24, 2020).  The jury awarded $21,250, representing approximately three months of backpay.  While this amount was only a fraction of what Plaintiff sought, she is a prevailing party under the NYCHRL.  *See, e.g., Marchuk v. Faruqi & Faruqi LLP*, 104 F. Supp. 3d 363, 367 (S.D.N.Y. 2015).

Before taking on her own representation, Plaintiff was represented by two attorneys at different periods during the first several years of this litigation.  Plaintiff seeks the full amount she paid to those attorneys in fees and expenses, as well as her own out-of-pocket expenses, totaling $25,333.75, as follows:

| | |
|---|---|
| Retainer paid to Jesse Rose | $7,500 |
| Additional fee to Jesse Rose | $300 |
| Retainer paid to Corey Stark | $10,000 |
| Additional fee to Corey Stark | $500 |
| Expenses (including transcripts and subpoenas) | $7,033.75 |
| Total | $25,333.75 |

Defendants argue that Plaintiff should be awarded no more than $5,600 in attorney's fees due to the limited degree of success on her claims.  As Defendants correctly point out, the

complaint in this case, filed by Mr. Rose in 2013, did not assert any retaliation claim, alleging only disability discrimination. It was only on January 31, 2018, during a pretrial conference with Judge Sweet, that Mr. Stark successfully argued that a retaliation claim had become part of the case based on questions he had asked of Defendants during discovery. (*See* Dkt. No. 243-3 at 45–49.)

The Court agrees with Defendants that the discrimination claims are sufficiently separable from the retaliation claims to warrant a reduction in fees, given that Plaintiff did not prevail on the former. *See Marchuk*, 104 F. Supp. 3d at 369. Indeed, the entire focus of the case while Mr. Rose represented Plaintiff was on the alleged "report" that supposedly followed Plaintiff from employer to employer, including SMBC — but no plausible evidence of such a report ever emerged. Therefore, the Court will not award the fees paid to Mr. Rose.

With respect to Mr. Stark, the Court finds that a reasonable estimate of his time on the retaliation claims is 60 percent. (*See* Dkt. No. 243-3 at 46 (Mr. Stark: "I have taken five depositions in this case, if my recollection serves. I would say at least four of the seven hours were devoted exclusively to retaliation.")) Accordingly, the Court will award Plaintiff 60 percent of the fees she paid to Mr. Stark, or $6,300.

The expenses and costs incurred by Plaintiff in this case, $7,033.75, are less easily separated and would likely be similar if the case had involved only retaliation claims. The Court will therefore award Plaintiff the full amount of expenses and costs.

The Court thus awards to Plaintiff, as the prevailing party under the NYCHRL, $6,300 in attorney's fees and $7,033.75 in costs and expenses.

**II.     Charging Lien**

One of Plaintiff's former attorneys, Corey Stark, seeks to assert a charging lien against Plaintiff's recovery. (*See* Dkt. No. 234.) Under New York law, attorneys who withdraw from

representation for good cause may assert a charging lien and seek to recover the reasonable value of their services. *See Guzik v. Albright*, No. 16-cv-2257, 2019 WL 3334487, *8 (S.D.N.Y. July 25, 2019). "A charging lien, although originating at common law, is equitable in nature, and the overriding criterion for determining the amount of a charging lien is that it be 'fair.'" *Sutton v. New York City Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006) (citations omitted). A contingency agreement is one of the factors relevant to assessing the value of an attorney's services. *See id.*

Mr. Stark has already received $10,500 in fees from Plaintiff. That is just short of 50 percent of Plaintiff's recovery at trial. Given that Mr. Stark represented Plaintiff on a contingent-fee basis, awarding him an additional piece of Plaintiff's recovery plainly would not be fair or reasonable. *See id.*

Mr. Stark also asserts that he is somehow entitled to an *additional* award of attorney's fees from Defendants, either directly or through Plaintiff. (Dkt. Nos. 234 & 238.) He is mistaken. A prevailing party, not her attorney, has the right to recover attorney's fees; Mr. Stark has no standing to seek fees. And Plaintiff herself cannot seek recovery for the hours Mr. Stark spent on the case beyond what she paid him: she does not owe him for those hours because this was a contingent-fee case.

The Court therefore denies Mr. Stark's request for fees and vacates his charging lien.

## III.    Defendants' Motion for Sanctions

By opinion and order dated July 13, 2017, Judge Sweet granted Defendants' motion for sanctions against Plaintiff based on her spoliation of relevant evidence during discovery in this case. *See Ottoson v. SMBC Leasing & Finance, Inc.*, 268 F. Supp. 3d 570 (S.D.N.Y. 2017). The Court will not repeat the details of Plaintiff's spoliation, which are fully described in Judge Sweet's opinion. The communications that Plaintiff destroyed or withheld — which Defendants

4

eventually obtained from a nonparty — revealed that "at worst, Plaintiff has fabricated the existence of the 'Report' on which her entire case rests, and at best, she has pressured witnesses to make certain assertions on her behalf." *Id.* at 583.  Finding that Plaintiff had "acted willfully or in bad faith," *id.* at 584, Judge Sweet granted Defendants' request for an adverse-inference instruction.  (The Court gave such an instruction at trial.)  Defendants also requested attorney's fees and expenses under Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure.  Judge Sweet adjourned "the assessment of costs and fees . . . to the final determination of this action." *Id.* at 585.

Defendants have filed their renewed motion for fees and costs based on Plaintiff's spoliation.  (*See* Dkt. Nos. 242, 243, 247.)  They request $95,878.76 in fees for their successful motion to compel and motion for sanctions under Rule 37(a)(5)(A).  They also seek an additional $75,059.80 in fees incurred in recovering the spoliated evidence, based on the Court's inherent authority to punish and deter a litigant's misconduct.  They also request $1,853.39 in costs relating to Plaintiff's spoliation.

Rule 37(a)(5)(A) provides that the court "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  It further provides that "the court must not order this payment if . . . other circumstances make an award of expenses unjust."

In addition to Rule 37, the Court has the inherent authority to award attorney's fees and costs in connection with spoliation motions to punish the offending party for its actions and deter the litigant's conduct, sending the message that egregious conduct will not be tolerated.  *Green v. McClendon*, 262 F.R.D. 284, 292 (S.D.N.Y. 2009).

Defendants have submitted detailed time entries documenting the time spent (1) in making their motion to compel and related motion for sanctions and (2) in recovering the missing evidence.[1]  The Court finds that the hourly rates charged by Defendants' attorneys and paralegals, which already reflect a ten-percent reduction, are reasonable in light of their experience, comparable rates in the legal community, and the quality of their representation.  The Court also finds the number of hours spent in connection with the motions and the recovery of the evidence to be reasonable in view of the importance and complexity of the issues involved in the context of the case.

Plaintiff's arguments in opposition to Defendants' fee request are largely attempts to reargue the original motion for sanctions.  (*See* Dkt. No. 249.)  But Judge Sweet already ruled on the motion, after careful consideration of the parties' arguments.  That ruling is the law of the case.  This Court sees no reason to disturb Judge Sweet's ruling.

Plaintiff also argues that sanctions are unwarranted because the lost evidence did not negatively impact Defendants' case at trial.  (Dkt. No. 249 at 6.)  But that is only because (1) Defendants spent $95,878.76 to make a sanctions motion that resulted in an adverse-inference instruction at trial; and (2) Defendants spent another $75,059.80 to investigate and recover the withheld evidence.  This is *not* a situation addressed by Rule 37(e) where the spoliated evidence is never recovered; showing prejudice beyond Defendants' expenditure of money is therefore not necessary.

Finally, Plaintiff asserts that the "spoliation of those few emails was not intentional by me." (Dkt. No. 249 at 13.)  But Judge Sweet already held that Plaintiff's conduct was

---

[1] Because the redacted portions of the billing records contain attorney work product and attorney-client communications, the Court grants Defendants' motion to seal at Docket Number 245.

undertaken willfully, in bad faith, or at the very least with gross negligence. *Ottoson*, 268 F. Supp. 3d at 582–84. Moreover, this Court believes that Defendant's spoliation (or failure to produce the emails in question) was willful.[2] In any event, an award of fees and expenses under Rule 37(a)(5) is presumptively mandatory even if the litigant's conduct was not intentional.

The Court "must not" award fees and expenses, however, if "other circumstances" make such an award "unjust." In particular, the Court must consider Plaintiff's *pro se* status and her assertion that she cannot afford a substantial sanctions award. Other courts have considered a party's *pro se* and indigent status in evaluating whether a fee award under Rule 37(a)(5) would be unjust. *See, e.g., Smith v. Fischer*, No. 13-cv-6127, 2019 WL 4750548, *2 (W.D.N.Y. Sept. 30, 2019).

This presents a difficult question. On the one hand, Plaintiff's misconduct in this case was, as Judge Sweet observed, "troubling." The goals of punishment and deterrence, as well as the need to compensate Defendants for the expenses they incurred due to Plaintiff's conduct, would seem to justify the full award that they seek. Plaintiff forced Defendants to incur hundreds of thousands of dollars in fees and expenses, not only through her destruction or withholding of evidence, but through factual statements and positions in this case that were

---

[2] Throughout this litigation, Plaintiff has made numerous contradictory, unbelievable, and likely false statements of fact. To note a few examples: (1) Plaintiff continues to assert that she has been "falsely accused" of writing affidavits for Ralph Berger; but as Judge Sweet found, the Berger emails showed that "Plaintiff has fabricated the existence of the 'Report' on which her entire case rests, [or] at best, she has pressured witnesses to make certain assertions on her behalf." 268 F. Supp. 3d at 583. (2) After claiming for years that she had no knowledge or recollection of the missing emails, Plaintiff suddenly asserted at trial that she remembered sending the emails and that they had been destroyed when her "basement . . . had a flood" — an entirely new claim lacking in credibility. (Dkt. No. 243-1 at 37, 42.) (3) After Plaintiff's termination, certain harassing emails were written to Robert McCarthy under different names (the "alias emails"). Viewed in context, there is little doubt that Plaintiff wrote the emails. But she denied having done so, under oath, repeatedly, and after a warning by the Court. (Dkt. No. 243-1 at 38.) The Court finds it more likely than not that her testimony was false on this point.

contradictory and lacking in credibility.  It is also worth noting that Defendants made settlement offers before trial that included withdrawing their fee request, but Plaintiff rejected those offers.

On the other hand, there are considerations that arguably militate against such a substantial fee award in this case.

First, Plaintiff is *pro se* and lacks the sophistication of lawyers and corporate litigants.  The force of this consideration is blunted by the fact that Plaintiff was represented by counsel at the time of the spoliation, but it still has some relevance.

Second, Plaintiff asserts that she cannot afford a fee award, pointing out that she is retired and that her only income is her $1,527 monthly Social Security check.  Defendants question whether she has shown that she is actually indigent, noting that she was able to pay her former lawyers over $25,000 in 2013 and 2014.  But the Court has little reason to question Plaintiff's assertion that she no longer has any significant income.  It seems clear that a substantial monetary award would fall much more heavily on Plaintiff than on Defendants.

Finally, there is the fact that a six-figure sanctions award against Plaintiff would dwarf her own damages award at trial.  It is true that she prevailed on only one claim and recovered only a small fraction of what she was seeking from Defendants in this case.  But it is also true that a jury found that Defendants had violated Plaintiff's rights under the NYCHRL.  Courts must be sensitive to the broad remedial purposes of civil rights laws and should hesitate before allowing a discovery mistake to undermine those purposes.

But this was not just a discovery mistake, or mere negligence, or attorney error.  Plaintiff spoliated evidence, did so willfully, and made repeated false statements throughout this case.  Her conduct was sufficiently serious that a fee award — even one greater than her recovery at trial — is warranted under the circumstances to serve the purposes of punishment, deterrence,

8

and providing compensation to Defendants. The Court concludes, however, that the full award requested by Defendants would be greater than justice requires in light of the considerations addressed above. Balancing these considerations, the Court finds that a total award of $60,000 is warranted.

Accordingly, pursuant to Rule 37 and the Court's inherent authority, the Court will award Defendants $60,000 in fees and expenses due to Plaintiff's spoliation.

## IV. Conclusion

1. Pursuant to the jury verdict in this case, Plaintiff Maureen Ottoson is entitled to recovery of $21,250 from Defendants SMBC and Lisa Saviñon under the NYCHRL. Plaintiff is also entitled to prejudgment interest at the New York statutory rate (nine percent) from August 1, 2012 (the date of Plaintiff's termination from SMBC) to March 5, 2021, which amounts to $16,427.40.[3] Therefore, Plaintiff's liability award with interest is **$37,677.40**.

2. Pursuant to the jury verdict in this case, all claims against David Ward are dismissed.

3. As the prevailing party under the NYCHRL, Plaintiff is entitled to $6,300 in attorney's fees and $7,033.75 in costs and expenses, for a total of **$13,333.75**.

4. Plaintiff's net recovery is **$51,011.15**.

5. The charging lien asserted by Corey Stark is vacated and Mr. Stark's request for fees is denied.

6. For the reasons discussed above, Defendants are entitled to an award of attorney's fees and costs from Plaintiff in the total amount of **$60,000**.

---

[3] To determine the prejudgment interest amount, the Court takes the award ($21,250), multiplies by .09 ($1,912.50), and divides by 365 to arrive at the daily interest amount ($5.24 per day). The Court multiplies the daily interest amount by the number of days between August 1, 2012 and March 5, 2021 (3,135 days) to arrive at total interest of $16,427.

7. Because the amount of Plaintiff's recovery is less than the amount she owes Defendants in attorney's fees and costs, the Court concludes that it is appropriate to issue a single judgment that includes Plaintiff's recovery as an offset against the sanctions award.

8. When Plaintiff's recovery is offset against Defendants' award, Defendants are entitled to a net amount of **$8,988.85** in attorney's fees and costs from Plaintiff.

**Accordingly, it is hereby ORDERED that the Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff in the amount of $8,988.85.**

The Clerk of Court is directed to close the motions at Docket Numbers 242 and 245, to enter judgment as set forth above, and to close this case.

The Clerk of Court is directed to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: March 5, 2021
New York, New York

_____
J. PAUL OETKEN
United States District Judge